1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    EDWARD SCOTT HELMER,                       No.  2:12-CV-00733-TLN-CKD

12                 Plaintiff,

13          v.                                    **ORDER**

14    BANK OF AMERICA, N.A., and DOES 1
      through 100, inclusive,
15
                     Defendants.
16

17

18

19          This matter is before the court on Defendant's Motion to Dismiss the Second Amended

20    Complaint ("SAC").  (Mot. to Dismiss, ECF 37.)  In support, Defendant also submitted a Request

21    for Judicial Notice.  (Req. for Judicial Notice, ECF 38.)  Plaintiff opposed the motion.  (Opp'n to

22    Mot. to Dismiss, ECF 40.)  Defendant submitted a reply in response.  (Def.'s Reply in Support of

23    Mot. to Dismiss, ECF 41.)  For reasons set forth below, Defendant's Motion is GRANTED.[1]

24    ///

25    ///

26    ///

27    ─────────────────────────
      [1] Because oral argument will not be of material assistance, the court orders this matter submitted
28    on the briefs.  E.D. Cal. L.R. 230(g).

                                              1

**BACKGROUND**

**A.  Parties and Relevant Factual Allegations**

Plaintiff Edward Scott Helmer ("Plaintiff") was the previous owner of property located at 135 Montana Court, Yuba City, CA 95991.  (SAC, ECF 34 at ¶ 2.)  Defendant Bank of America, N.A., ("Defendant") is a diversified financial corporation engaged in residential mortgage banking and other related businesses.  (ECF 34 at ¶ 3.)

In or around 2005, Plaintiff entered into a mortgage agreement with Countrywide Lending to purchase a house at 135 Montana Court, Yuba City, CA 95991.  (ECF 34 at ¶¶ 2, 6.) Defendant subsequently acquired Plaintiff's mortgage via merger with BAC Home Loans LP, formerly known as Countrywide Home Loans Servicing.  (ECF 34 at ¶¶ 3, 6.)  In January 2011, Plaintiff contacted Defendant to negotiate a possible loan modification.  (ECF 34 at ¶ 7.) Defendant allegedly suggested that Plaintiff should cease making his mortgage payments in order to qualify for a loan modification and reassured him that it would not initiate foreclosure proceedings during this process.  (ECF 34 at ¶ 7.)  Plaintiff alleges that he subsequently began purposefully skipping his mortgage payments while he waited for the necessary loan modification paperwork from Defendant.  (ECF 34 at ¶ 7.)  Later that month, Plaintiff also applied for a refinance of his mortgage after Defendant notified him that he qualified.  (ECF 34 at ¶ 10.)

After Plaintiff repeatedly contacted Defendant for six months, he finally received, and subsequently submitted, the loan modification paperwork in July 2011.  (ECF 34 at ¶¶ 8–9.) During these conversations, Plaintiff alleges that Defendant continuously advised him to not make any mortgage payments until he received a loan modification offer.  (ECF 34 at ¶ 8.)

Over the next few months, Plaintiff alleges that Defendant delayed or disregarded his attempts to complete his loan modification application.  (ECF 34 at ¶ 11.)  Plaintiff alleges that Defendant never gave him definitive updates, transferred him between numerous phone lines, and placed him on hold for such lengths of time that Plaintiff was no longer able to maintain calls. (ECF 34 at ¶ 11.)  Plaintiff also alleges that Defendant repeatedly claimed to have lost his documents and repeatedly forced him to resubmit the materials for his loan modification

2

application.  (ECF 34 at ¶ 11.)

    In September 2011, Defendant initiated foreclosure proceedings against Plaintiff by filing a Notice of Default ("NOD").  (ECF 34 at ¶ 12; see also ECF 38-9 at 2–4.)  When Plaintiff sought clarification regarding the NOD, Defendant allegedly told Plaintiff that he need not worry because it had not yet made a decision on his loan modification application.  (ECF 34 at ¶ 12.)  Plaintiff allegedly offered to reinstate his loan by tendering his arrears of approximately $30,000, but Defendant allegedly told him it was unnecessary because his home would not face foreclosure proceedings.  (ECF 34 at ¶ 12.)

    In December 2011, Plaintiff received a Notice of Trustee's Sale ("NTS").  (ECF 34 at ¶ 13; see also ECF 38-10 at 2.)  Plaintiff alleges that Defendant again told him to ignore the NTS because his application was still in review.  (ECF 34 at ¶ 13.)  Defendant allegedly also told Plaintiff that his reinstatement offer was unnecessary because the sale would not take place. (ECF 34 at ¶ 13.)  Plaintiff states that despite these assurances, Defendant foreclosed upon and sold Plaintiff's property even though he allegedly could have reinstated his arrears had Defendant not deceived him.  (ECF 34 at ¶ 14.)

## B.  Request for Judicial Notice

    Defendant requests that the court take judicial notice of several documents recorded with the Sutter County Recorder and the United States Bankruptcy Court for the Eastern District of California.  (ECF 38 at 2.)  Plaintiff does not oppose this request.  In resolving a motion to dismiss, courts may consider matters that are subject to judicial notice, which includes matters of public record.  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  This includes records of a country recorder.  See Grant v. Aurora Loan Servs., Inc., 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (taking judicial notice of records of county recorder).  Courts may also take notice of proceedings in other courts if they have a direct relation to the matters at issue.  United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  Because the Sutter County Recorder's documents (ECF 38-1 through ECF 38-12) are records of an administrative body and

Plaintiff's wife's Voluntary Petition for Bankruptcy (ECF 38-13) is a matter directly related to these proceedings, the court takes judicial notice of these documents.

### C. Plaintiff's Claims for Relief and Relevant Procedural History

Plaintiff filed his first complaint on February 15, 2013, in California State Superior Court for the County of Sutter, asserting claims for: (1) Breach of Good Faith and Fair Dealing, (2) Promissory Estoppel, (3) Wrongful Foreclosure in Violation of California Civil Code § 2924 *et seq*, (4) Intentional Infliction of Emotional Distress ("IIED"), and (5) Unfair Competition under California Business and Professions Code § 17200 *et seq*.  (See Def.'s Notice of Removal, ECF 1-2.)  On March 22, 2012, Defendant removed the matter to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.

Plaintiff filed his First Amended Complaint ("FAC") as a matter of course under Federal Rule of Civil Procedure 15(a) on April 26, 2012, asserting the following claims: (1) Breach of Good Faith and Fair dealing, (2) Promissory Estoppel, (3) Wrongful Foreclosure in violation of California Civil Code § 2924, *et seq*., (4) IIED, (5) Unfair Competition pursuant to California Business and Professions Code § 17200, *et seq.*, and (6) Quiet Title.  (ECF 13 at 5–11.)

On July 13, 2012, Defendant moved to dismiss all six claims asserted in the FAC.  (Mot. to Dismiss, ECF 17.)  On March 22, 2013, the court granted in part and denied in part Defendant's motion.  (See generally Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss, ECF 29.)  Specifically, the court dismissed Plaintiff's claims for Wrongful Foreclosure, IIED, and Unfair Competition *with* leave to amend.  (ECF 29 at 11.)  The court also dismissed Plaintiff's claims for Quiet Title and Breach of Good Faith and Fair Dealing *without* leave to amend.  (ECF 29 at 11.)  The court, however, denied Defendant's motion to dismiss Plaintiff's claims for promissory estoppel.  (ECF 29 at 11.)

Plaintiff subsequently filed his SAC on April 12, 2013, asserting the following claims: (1) Promissory Estoppel, (2) Wrongful Foreclosure pursuant to California Civil Code § 2924, *et seq*., (3) IIED, and (4) Unfair Competition under California Business and Professions Code § 17200, *et seq.*  (See ECF 34 at 5–9.)

On May 6, 2013, Defendant moved to dismiss the SAC's second, third, and fourth claims for wrongful foreclosure, IIED, and unfair competition.[2]  (ECF 37 at 2.)  Defendant argues that Plaintiff failed to allege facts sufficient to state plausible claims and did not remedy the complaint's deficiencies identified by the court's previous Order.  (ECF 37 at 2.)  Defendant asserts that the FAC fails to state a claim for Wrongful Foreclosure because Plaintiff does not allege that he can tender the full amount of the secured indebtedness, cannot allege a specific violation of California Civil Code § 2924, *et seq*., and fails to establish prejudice.  (Def.'s Mot. to Dismiss, ECF 37-1 at 6.)  Defendant also maintains that Plaintiff's claim for IIED does not allege sufficient facts to demonstrate that Defendant's conduct was "extreme and outrageous," and that Defendant intended to inflict emotional distress.  (ECF 37-1 at 6–7.)  Defendant further insists that Plaintiff fails to state a claim for Unfair Competition because Plaintiff's predicate claims fail and because Plaintiff does not specify which prong of the statute Defendant violated.  (ECF 37-1 at 7.)

## STANDARD

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . .  is and the grounds upon which it rests."  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

---

[2] The court notes that Defendant did not move to dismiss Plaintiff's claim for Promissory Estoppel.  As such, although the court grants Defendant's motion to dismiss in its entirety, Plaintiff's claim for Promissory Estoppel remains.

5

1   Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

2   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

3   relief."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

4   factual content that allows the court to draw the reasonable inference that the defendant is liable

5   for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. 544, 556 (2007)).

6         Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

7   factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir.

8   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

9   unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A

10  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

11  elements of a cause of action."  Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678

12  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

13  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

14  facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

15  been alleged[.]" Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,

16  459 U.S. 519, 526 (1983).

17        Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18  facts to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 697 (quoting

19  Twombly, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .

20  across the line from conceivable to plausible[,]" is the complaint properly dismissed.  Id. at 680.

21  While the plausibility requirement is not akin to a probability requirement, it demands more than

22  "a sheer possibility that a defendant has acted unlawfully."  Id. at 678.  This plausibility inquiry is

23  "a context-specific task that requires the reviewing court to draw on its judicial experience and

24  common sense."  Id. at 679.

25        In ruling upon a motion to dismiss, the court may consider only the complaint, any

26  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

27  Evidence 201.  See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu

28

6

1  Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

2  1998).

3      If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

4  amend even if no request to amend the pleading was made, unless it determines that the pleading

5  could not possibly be cured by the allegation of other facts.'"  Lopez v. Smith, 203 F.3d 1122,

6  1130 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 484, 497 (9th Cir. 1995));

7  see also Gardner v. Marino, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in

8  denying leave to amend when amendment would be futile).  Although a district court should

9  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

10  deny such leave is 'particularly broad' where the plaintiff has previously amended its

11  complaint.[]"  Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir.

12  2013)  (quoting Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004)).

13                                          **ANALYSIS**

14      **A.  Wrongful Foreclosure**

15      Defendant moves to dismiss Plaintiff's claim for wrongful foreclosure, arguing that

16  Plaintiff fails to allege sufficient facts demonstrating that he can tender the full amount due under

17  the mortgage agreement.  (ECF 37-1 at 11–12.)  In response, Plaintiff argues that he sufficiently

18  states a plausible claim because he "offered to reinstate his loan by tendering his arrears which

19  totaled approximately $30,000."  (ECF 40 at 3.)

20      "An allegation of tender of the indebtedness is necessary when the person seeking to set

21  aside the foreclosure sale asserts the sale is voidable due to irregularities in the sale notice or

22  procedure."  West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780, 801–02 (2013) (citing

23  Abdallah v. United Sav. Bank, 43 Cal. App. 4th 1101, 1109 (1996)); see also Karlsen v. Am. Sav.

24  & Loan Ass'n, 15 Cal. App. 3d 112, 117 (1971) ("A valid and viable tender of payment of the

25  indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.").

26  This rule prevents "'a court from uselessly setting aside a foreclosure sale on a technical ground

27  when the party making the challenge has not established his ability to purchase the property.'"

28

<u>Magdaleno v. Indymac Bancorp, Inc.</u>, 853 F. Supp. 2d 983, 991 (E.D. Cal. 2011) (quoting <u>Williams v. Countrywide Home Loans</u>, No. C 99-0242 (SC), 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999)).

"A mere allegation that Plaintiff has offered to tender is insufficient." <u>Chavers v. GMAC Mortg., LLC</u>, No. 11-CV-01097 (ODW), 2012 WL 777491, at *1 (C.D. Cal. Mar. 9, 2012) (citing <u>Stebley v. Litton Loan Servicing, LLP</u>, 202 Cal. App. 4th 522, 526 (2011)). "[A]n offer of performance is of no effect if the person making it is not able to perform." <u>Karlsen</u>, 15 Cal. App. 3d at 118. Instead, "[a] full tender must be made to set aside a foreclosure sale, based on equitable principles." <u>Stebley</u>, 202 Cal. App. 4th at 526.

Courts must strictly apply the tender rule in wrongful foreclosure cases. <u>Nguyen v. Calhoun</u>, 105 Cal. App. 4th 428, 439 (2003). "'The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.'" <u>Madlaing v. JPMorgan Chase Bank, N.A.</u>, No. 2:12-CV-02069 (LJO), 2013 WL 2403379, at *5 (E.D. Cal. May 31, 2013) (quoting <u>Gaffney v. Downey Savs. & Loan Ass'n</u>, 200 Cal. App. 3d 1154, 1165 (1988)).

Plaintiff's arguments in the instant case are unavailing because the tender rule specifically requires a party to tender the full amount of the secured debt on a mortgage — not just the arrears owed — in order to maintain a plausible claim for wrongful foreclosure. Plaintiff states that he "remains ready, willing and able to tender the reinstatement amount that he would have tendered." (ECF 34 at ¶¶ 27–28.) His opposition also maintains that "Plaintiff offered to reinstate his loan by tendering his arrears which totaled approximately $30,000." (ECF 40 at 3.) These allegations are insufficient to state a plausible claim for wrongful foreclosure. As the court noted in its previous Order: "[c]ourts routinely reject plaintiffs' arguments that they have met the tender requirement by alleging that they could have paid the amount they owed under their mortgage at any time." (ECF 29 at 7 (citing <u>Carson v. Bank of Am., N.A.</u>, No. 2:12-CV-01487 (MCE), 2013 WL 394867, at *5 (E.D. Cal. Jan. 30, 2013).) The relevant case law is clear that

1   mere allegations of offers to tender are not sufficient to sustain a claim for wrongful foreclosure.

2   Chavers, 2012 WL 777491, at *1.  Even if Plaintiff sufficiently tendered any reinstatement

3   amount, Plaintiff fails to allege that he could tender the full amount of the secured debt on his

4   mortgage — $380,207.31— at the time of the trustee's sale.  (ECF 38-12 at 2.)  An offer to tender

5   arrearages does not meet the requirement of tendering the full amount of secured debt.  Stebley,

6   202 Cal. App. 4th at 526.  Because Plaintiff fails to allege facts that establish his ability to tender

7   the full amount of the secured indebtedness, he fails to satisfy the tender requirement for

8   wrongful foreclosure set forth in California Civil Code § 2924, *et seq.*

9           In the alternative, Plaintiff argues that because the tender requirement is an equitable

10  principle, "[t]he doctrine of tender is inapplicable to a case for damages."  (ECF 40 at 5.)  Despite

11  general citations to cases discussing the purpose of the tender requirement, Plaintiff cites no

12  relevant authority supporting this contention.  To the contrary, courts have consistently found that

13  plaintiffs are "'required to allege tender of the amount of [the lender's] secured indebtedness in

14  order to maintain *any cause of action* for irregularity in the sale procedure.'"  Carson, 2013 WL

15  394867, at *4 (alteration in original) (emphasis added) (quoting Abdallah, 43 Cal. App. 4th at

16  1109); see also Altmann v. Homestead Mortg. Income Fund, 887 F. Supp. 2d 939, 951 (E.D. Cal.

17  2012); Saldate v. Wilshire Credit Corp., 268 F.R.D. 87, 104 (E.D. Cal. 2010).  Plaintiff directs the

18  court to no relevant authority finding that the tender rule is not applicable to cases seeking

19  damages.[3]

20          Based on the foregoing, Defendant's motion to dismiss Plaintiff's claim for wrongful

21  foreclosure is GRANTED without leave amend.[4]

22  _____

23  [3] In support of his equitable arguments, Plaintiff cites Tamburri v. Suntrust Mortg., Inc.,
    No. C-11-2899 (EMC), 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011) and Sacchi v. Mortg. Elec.

24  Registration Sys., Inc., No. CV 11-1658 (AHM), 2011 WL 2533029 (C.D. Cal. June 24, 2011), in
    which the courts held that the tender rule was not applicable to pre-foreclosure lawsuits brought

25  under California Civil Code § 2923.5.  (ECF 40 at  4:26-5:3.)  Both Tamburi and Sacchi,
    however, are inapposite in that Plaintiff challenges a completed foreclosure sale under the

26  statutory framework set forth in California Civil Code § 2924, *et seq.*  Those cases were also
    brought pursuant to California Civil Code § 2923.5 whereas Plaintiff's claims are brought

27  pursuant to Section 2924.
    [4] Defendant also argues that Plaintiff did not allege a proper violation under § 2924, *et seq.* and

28

1

**B.   Intentional Infliction of Emotional Distress**

2        Defendant also moves to dismiss Plaintiff's claim for IIED, arguing that Plaintiff failed to

3   plead any facts showing that Defendant intentionally caused Plaintiff's alleged emotional distress.

4   (ECF 37-1 at 17–18.)  In response, Plaintiff argues that it alleged sufficient facts to demonstrate

5   that Defendant either intended to cause Plaintiff's emotional distress or recklessly disregarded the

6   probability that Plaintiff would suffer emotional distress because of Defendant's alleged conduct.

7   (ECF 40 at 8–9.)

8        The elements of a claim for IIED under California law are: "'(1) extreme and outrageous

9   conduct by the defendant with the intention of causing, or reckless disregard of the probability of

10  causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and

11  (3) actual and proximate causation of the emotional distress by the defendant's outrageous

12  conduct.'"  Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting

13  Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009)).  The conduct must be "so extreme as to exceed

14  all bounds of that usually tolerated in a civilized community."  Hughes, 46 Cal. 4th at 1051

15  (internal citations and quotations omitted).  "The act of foreclosing on a home (absent other

16  circumstances) is not the kind of extreme conduct that supports an intentional infliction of

17  emotional distress claim."  Quinteros v. Aurora Loan Servs., 740 F. Supp. 2d 1163, 1172 (E.D.

18  Cal. 2010).

19       "The defendant's conduct must [also] be intended to inflict injury or engaged in with the

20  realization that injury will result."  Hughes, 46 Cal. 4th at 1051 (internal citations and quotations

21  omitted).  "[T]he conduct must be more than 'intentional and outrageous.  It must be conduct

22  directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.'"

23  Shoop v. Deutsche Bank Nat. Trust Co., No. 2:10-CV-01049 (LJO), 2010 WL 2605708, at *9

24  (E.D. Cal. June 28, 2010) (quoting Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991)),

25  aff'd, 465 F. App'x 646 (9th Cir. 2012).  Where reckless disregard is the theory of recovery,

26

27  that Plaintiff fails to allege sufficient facts demonstrating prejudice.  (ECF 37-1 at 14–16.)  While
    it acknowledges these arguments, the court does not reach these issues because it decided this
28  motion on other grounds.

10

1    Plaintiff must allege that "defendant is aware, but acts with reckless disregard, of the plaintiff and

2    the probability that his or her conduct will cause severe emotional distress." Id. at *9 (citing

3    Christensen, 54 Cal. 3d at 905–06).

4         The court finds Plaintiff's arguments unpersuasive because the SAC still fails to allege

5    non-conclusory facts demonstrating Defendant's intent to cause emotional injury.  As the court

6    noted in its previous Order, "[e]ven assuming [D]efendant's conduct was extreme and

7    outrageous, [P]laintiff's complaint alleges no facts showing that [D]efendant intentionally caused

8    [P]laintiff's emotional distress." (ECF 29 at 10.)  Even though Plaintiff had the opportunity to

9    amend his complaint, the SAC still suffers from the same factual deficiencies addressed in the

10   court's prior order dismissing Plaintiff's claim for IIED.  In the SAC, Plaintiff alleges that

11   Defendant intended to take Plaintiff's property via foreclosure sale.  (ECF 34 at ¶ 32.)

12   Specifically, Plaintiff states that Defendant's "engineering of the foreclosure . . . demonstrated a

13   reckless disregard for the probability of causing Plaintiff emotional distress." (ECF 34 at ¶ 30.)

14   However, the allegation that Plaintiff suffered emotional distress because Defendant foreclosed

15   on his home is not sufficient to state a plausible claim for IIED.  See Quinteros, 740 F. Supp. 2d

16   at 1172.  Plaintiff does not allege any facts that Defendant "intended to cause, or disregarded the

17   possibility of causing, emotional distress." Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d

18   1185, 1204 (S.D. Cal. 2010).  Plaintiff only states that Defendant intended to foreclose on

19   Plaintiff's property.  This allegation in-and-of-itself is insufficient to state a plausible claim.

20   Plaintiff also fails to allege facts that Defendant was aware of the probability that his or her

21   conduct will cause severe emotional distress.  Plaintiff's conclusory allegations of intent without

22   supporting factual allegations are insufficient to support Plaintiff's claim for IIED.

23        Alternatively, Plaintiff argues that it alleges a plausible claim for IIED because Rule

24   9(b)'s pleading standards permit parties to aver intent generally.[5] (ECF 40 at 9.)  In support of

25   this position, Plaintiff cites Heimann v. Nat'l Elevator Indus. Pension Fund, 187 F.3d 493 (5th

26

27   _____
     [5] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting
     fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be
28   alleged generally." Fed. R. Civ. P. 9(b).

                                          11

Cir. 1999), a Fifth Circuit decision discussing pleading requirements for claims brought pursuant to the Employee Retirement Income Security Act.  (ECF 40 at 9.)  <u>Heimann</u> was subsequently overruled by <u>Arana v. Ochsner Health Plan</u>, 338 F.3d 433 (5th Cir. 2003), and has little relevance in determining whether Plaintiff has satisfied the requisite pleading standards for a claim for IIED.

Even if it were applicable to Plaintiff's claims for IIED, "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." <u>Iqbal</u>, 556 U.S. at 686–87.  "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." <u>Id.</u> at 687.  Plaintiff cites no relevant case law suggesting he can state a plausible claim for IIED through conclusory allegations of intent.  Rather, Plaintiff must allege facts that Defendant intended or recklessly disregarded the possibility to cause emotional distress, but has failed to do so.  <u>Mehta</u>, 737 F. Supp. 2d at 1204; <u>Shoop</u>, 2010 WL 2605708, at *9 (relying on <u>Christensen</u>, 54 Cal. 3d at 868).  Thus, Plaintiff's conclusory averments of intent without supporting factual allegations are insufficient to support his claim for IIED under the standard set forth by Federal Rule of Civil Procedure 12(b)(6).

Because Plaintiff failed to rectify the deficiencies identified in the court's previous Order, Defendant's motion to dismiss Plaintiff's claim for IIED is GRANTED without leave amend.[6]

## C.  Unfair Competition

Defendant also argues that Plaintiff fails to state a plausible claim for unfair competition because the predicate claims fail and because Plaintiff still does not allege sufficient facts to support a claim under California law.  (ECF 37-1 at 19–20.)  In opposition, Plaintiff's argue that this claim is "clearly based on Defendant's unlawful business practices . . . and is tethered to Defendant's violations of California law."  (ECF 40 at 10.)

---

[6] Defendant also argues that Plaintiff fails to allege any behavior that rises to "extreme and outrageous" conduct.  (ECF 37-1 at 17–18.)  While the court acknowledges this argument, it does not reach this issue because the court decided this motion on other grounds.

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. An act violates the UCL if it is either "unlawful," "unfair," or "fraudulent." Rubio v. Capitol One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010). A plaintiff must state a violation of a predicate law to properly allege that the defendant's actions were "unlawful" in violation of the UCL. Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Superior Court, 27 Cal. App. 4th 832, 838–39 (1999).

"A plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993) (internal citations omitted). A complaint fails to state a plausible claim if it "identifies no particular section of the statutory scheme which was violated and fails to describe with any reasonable particularity the facts supporting violation." Id.

Plaintiff's arguments in the instant case are unavailing because the SAC still does not clearly identify under which prong Defendant's conduct violates the UCL. Though Plaintiff may have made semantic changes to the SAC, he still fails to plead sufficient facts to support the statutory elements of the violation. Plaintiff alleges that Defendant violated the UCL because Plaintiff stated claims for promissory estoppel, wrongful foreclosure, and IIED. (ECF 29 at ¶¶ 36–38.) Because the court already dismissed Plaintiff's wrongful foreclosure and IIED claims, only Plaintiff's promissory estoppel claim can serve as a potential predicate for Plaintiff's claim for unfair competition.

Plaintiff however repeats the same errors identified in the previous Order. That is, Plaintiff still fails to state under which prong Plaintiff alleges a violation of the UCL. (ECF 29 at 11.) Plaintiff alleges that "Defendant's inducement of Plaintiff's detrimental reliance under the doctrine of promissory estoppel constitutes unfair competition . . . ." (ECF 34 at ¶ 37.) Plaintiff

1 subsequently states that "[a]s a result of Defendant's unlawful conduct, Plaintiff has suffered

2 various damages and injuries . . . ."  (ECF 34 at ¶ 39.)  While this language may constitute a

3 semantic improvement upon the FAC, Plaintiff still does not allege sufficient facts demonstrating

4 the manner in which Defendant's practice is either "unlawful" or "unfair" within the meaning of

5 the UCL.  See Khoury, 14 Cal. App. 4th at 619.  Plaintiff's modification of selected words in the

6 SAC is not sufficient to remedy the insufficiently pleaded facts.  A conclusory statement that

7 conduct is "unlawful" or "unfair" will simply not suffice.  See Iqbal, 556 U.S. at 678 ("A

8 pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

9 of action will not do.'" (quoting Twombly, 550 U.S. at 555)).

10          Because Plaintiff again failed to remedy the errors previously identified by the court,

11 Defendant's motion to dismiss Plaintiff's claim for unfair competition pursuant to California

12 Business and Professions Code § 17200, *et seq.* is GRANTED without leave amend.

13                                    **CONCLUSION**

14          For the stated reasons, Defendant's Motion to Dismiss (ECF 37) is GRANTED.

15 Plaintiff's claims for wrongful foreclosure, IIED, and unfair competition are DISMISSED

16 without leave to amend.  Defendant is hereby directed to submit a timely answer to Plaintiff's

17 claim for promissory estoppel.

18          **IT IS SO ORDERED.**

19

20 Dated: August 26, 2013

21

22

23

24                                                         Troy L. Nunley
                                                           United States District Judge
25

26

27

28
                                            14